[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 Introduction
This is a petition for a new trial in which the petitioner has presented evidence which he alleges is vital to his claim of self defense. He was convicted of murder and carrying a dangerous weapon in 1996. His convictions were affirmed on appeal. (State v. Shabazz, CT Page 12209246 Conn. 746 (1998)).
The evidence referred to above is claimed to be "newly discovered," in that the witness to the event came forward after the jury verdict was returned on November 27, 1996.
The petitioner was heard on November 9, 1999 but counsel were unable to obtain the transcript for several months because of the court reporter's medical leave.
The petitioner claims that he has met the standard for a new trial: that the evidence is newly discovered, that it could not have been discovered by the exercise of due diligence, it would be relevant and material on a new trial, not cumulative, and would likely produce a different result. See Johnson v. State, 36 Conn. App. 59, cert. denied,231 Conn. 946 (1994).
 Statement of Facts
The evidence in question was offered by one Lorin Frazier who claimed to be an eye witness to the altercation which resulted in the charged homicide.
Though he claims to have been on the scene and to have witnessed the entire episode, Frazier did not tell the police what he saw. It was also Frazier's testimony that he had been in the company of the victim, Michael Stewart, prior to the confrontation with the petitioner.
The petitioner's claim of self defense evolved about his response to what he perceived as the victim's actions in reaching into a trash can and re-appearing with what he thought was "the handle of a gun" in his hand.
The petitioner argues that Frazier's testimony supports the self defense claim, in that the petitioner stabbed him in response to the threat to his life.
 Discussion I
On the strength of the testimony of the petitioner's trial counsel and investigator, the court finds that the evidence presented was newly discovered and could not have been discovered by them, exercising due diligence.
CT Page 12210 This finding in no way addresses the issues of truth or accuracy, and is preliminary to the court's evaluation of it in terms of the other requirements of Johnson v. State, cited above.
Similarly, were this evidence offered at trial it would certainly be found relevant and not cumulative, it being the only such evidence.
 II
The remaining prong of the Johnson requirements is that the proffered evidence would produce a different result. The court concludes that it would not for the reasons recited below.
 A.
Lorin Frazier is a convicted felon and drug abuser whose memory is affected by serious health problems — in his own words. In his testimony, he displayed a remarkable inconsistency in being able to recall some events and not others. He appeared to have no difficulty relating in detail the events of May 3, 1994, the day of the murder, even as to what he and the victim drank prior to the confrontation that resulted in Stewart's death.
It was obvious to the court that Mr. Frazier was prepared to buttress the petitioner's version of the event, even to the point of stating that the victim went to the trash can "to get a pistol." There was no evidence the victim had one stored there, no weapon was found at the scene, and in answer to the court's questions, Mr. Frazier stated he never saw Stewart with a gun and when his hand came out of the trash can, he had no weapon.
He was utterly incapable of relating his drug treatment and residence history and where he was when he claimed he read about the case.
After telling the court that he and Stewart would keep a gun in the trash can to scare their card-shark victims, he told of Stewart saying "he was going to get a gun." But this is preceded by:
 ". . . I think I seen Shabazz go in his jacket, so the kid was like, oh, so you really do have something, uh-huh. I am going to go in this can. I am going to go in this garbage can and get this pistol and I will blow your brains out before everybody. He said something that comply with that."
Under cross examination and when confronted with a portion of his 1997 CT Page 12211 statement, Frazier conceded that after Stewart struck Shabazz, the latter drew his knife. So, though Stewart was the aggressor, Shabazz responded by drawing a knife, using it to stab the victim.
Frazier's version of the fight is contradicted by other bystanders, none of whom had any prior relationship with either the victim, the petitioner or Frazier.
The court also finds it significant that Frazier testified that he came forward with his story because he read about the Shabazz case in a newspaper. Yet Germano Kimbro, who acted as his "contact" with defense counsel and who was present when he gave his statement in 1997 was less than forthcoming when queried about the surrounding circumstances. He did not recall that in his 1997 statement, Frazier stated that Kimbro had heard he was present at the time of the fight and homicide.
Finally, the court finds it remarkable that testifying in 1999, Frazier recited details of the encounter, and at all times and even when pressed, inserted information which portrayed Shabazz as acting to defend himself from Stewart and believing that Stewart had access to a gun and was emerging from the trash can with it. He also told the court Stewart was violently aggressive when under the influence and was aggressive on this occasion.
Yet, he neglected to come forward because "no one asked me" and because he "was not clean" and "therefore I would try to stay away from cops and stuff."
Adding to the picture is the history of the prior personal relationships between Frazier and Kimbro and Kimbro and Shabazz. It appears likely Mr. Kimbro was doing more than "adding clarity" (his words) to the taking of the statement. Interestingly, trial counsel testified that "It was Mr. Kimbro who located Mr. Frazier. . . ." (Transcript, p. 45).
The court does not find Frazier and Kimbro to be credible witnesses.
 B. 1.
The testimony of Mr. Frazier is contradicted by the evidence given by bystander witnesses, and it was obviously their testimony that resulted in the self defense claim being rejected at the criminal trial. Two of these witnesses were total outsiders to the parties and the events observed. CT Page 12212
One witness, Monique McNeil, described the petitioner and the victim fighting. She related that Stewart was trying to get away from Shabazz. And, when Stewart went into the trash can, "Shabazz really got up on him." She next saw Shabazz on top of Stewart and Stewart was bleeding.
The testimony of Martin Tchakirides is also significant, He has the petitioner the one who first pulls a weapon and he describes Stewart as trying to "pull away." He then notes this attempt was unsuccessful because Shabazz "had a hold of him." He describes Shabazz "slashing and sticking" and Stewart trying to defend and stop the blows. Finally, he relates, when Stewart fell to the ground, Shabazz went back and attacked him on the ground.
None of this squares with the petitioner's version of events and his claim that he only stabbed the victim once. The autopsy disclosed numerous stab wounds and two defensive wounds.
Finally, Detective Ralph Dinello testified that he interviewed Shabazz in the early afternoon after the incident. He never mentioned Stewart reaching into a trash can. When asked if Stewart had a weapon, he responded "No."
All three of these witnesses appear much more credible than Mr. Frazier who has a criminal record and dubious connections with Shabazz.
For these reasons, the court reaches the conclusion that Frazier's testimony on a retrial would not cause a jury to ignore the state's evidence and accept a self defense claim.
 2.
While the petitioner argues the import of Frazier's testimony, there is yet another reason to conclude that it would not produce a different outcome. The fact is that a careful reading of the testimony elicited at the hearing on the petition for a new trial reveals that it does not
support the claim of self defense.
In his initial statements about the confrontation between the petitioner and the victim, (Transcript, p. 79), Frazier has Shabazz become the aggressor as he "go in his jacket. . . ." This was after Stewart struck Shabazz. He goes onto say:
 "So when Mike was coming out of the can (i.d., the trash can) he grabbed his coat like back here and by the time Mike was trying to take off he was dragging CT Page 12213 Shabazz with him."
Thus, at the point Stewart was to have put Shabazz in fear because of his allegedly going into the trash can to get a gun, he was trying to get away. And it was after this that Shabazz stabbed him.
While Frazier made much of the movement of Stewart to reach a weapon in the trash can, Frazier saw him emerge without a weapon. And, if Stewart was "trying to take off," one must question the validity of the perceived threat to Shabazz and why it was necessary to stab someone "trying to take off."
On cross examination, Frazier agrees that after being struck by Stewart, Shabazz took out a knife and started to chase him. Frazier then went on to say that he warned Stewart "not to let Mr. Shabazz get up on him because he had a knife." (Transcript, pages 129-130).
The testimony about the trash can reveals that Shabazz is chasing Stewart with the knife. And, it was Frazier's testimony that when Stewart collapsed, he told Shabazz to stop as the victim had "had enough," with Shabazz astride him.
Mr. Frazier confirmed that Stewart never had a weapon and that he had none when he emerged from the trash can.
In the court's view, Frazier's evidence, cleansed and culled and explained, does not amount to evidence that Shabazz acted in self defense. In fact, it confirms that after he was struck by Stewart's hand, or fist at worst, he resorted to the use of a weapon, chased him and he used the weapon until his victim was prostrate.
At best, the evidence offered would be cumulative of other evidence produced by the prosecution.
 C.
In his reply brief, the petitioner argues that Frazier's testimony is also relevant as it "impacts directly on the admissibility of Dr. Merikangas's testimony." This testimony had been excluded at trial but, the petitioner urges, Stewart's aggressive behavior was vital to the defense, and now after Frazier's testimony, it would be admitted.
Exactly what it would add to the defense is unclear. There is no question that Stewart was the original aggressor and that he struck Shabazz after they exchanged words. (The court notes, however, that Frazier describes no violent behavior by Stewart until the exchange with CT Page 12214 Shabazz).
Consequently, the Merikangas testimony would be cumulative, serving at best to suggest Stewart's ingestion of drugs and alcohol rendered him susceptible to aggression. The aggression was not exhibited until Shabazz and he were in contact and he was trying to get away, according to Frazier, when Shabazz pursued him with his knife.
The court finds nothing in this argument to support the petitioner's claims.
 CONCLUSION
The petition for a new trial is denied. The evidence presented, even if believed, would not result in a jury finding Shabazz not guilty. (Grayv. State, 51 Conn. App. 689 (1999).
Anthony V. DeMayo Judge Trial Referee